**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ECOLOGIC SOLUTIONS, LLC
(formerly known as Ec'Eau, LLC),
a Delaware limited liability company,

                Petitioner,

v.                                                                                      No. CIV 10-1220 JCH/LFG

BIO-TEC ENVIRONMENTAL, LLC,
a New Mexico limited liability company,
JOHN LAKE, an individual,
LAURA BURKETT, an individual, and
JENNA RAMOS, an individual,

                Respondents.

**MEMORANDUM OPINION AND ORDER**
**REQUIRING ADDITIONAL BRIEFING FROM THE PARTIES**

**Introduction**

THIS MATTER is before the Court in accordance with an Order entered by District Judge Judith C. Herrera referring Petitioner Ecological Solutions, LLC ("Ecological") First Amended Petition to Compel Arbitration to the undersigned magistrate judge to make findings and a recommended disposition under 28 U.S.C. § 636(b)(1)(B). [Doc. 20] The Court has reviewed Ecological's exhibits to its December 20, 2010 Complaint to Compel Arbitration ("Complaint") [Doc. 1, Exhibits], its January 11, 2011 Amended Complaint to Compel Arbitration ("Amended Complaint") and exhibits [Doc. 10], the response by Bio-Tec Environmental, LLC, John Lake, Laura Burkett, and Jenna Ramos ("Respondents" or "BTE") and exhibits [Doc. 13], and Ecologic's

Reply [Doc. 14.] In order to make the required findings and recommended disposition, the Court determines that additional briefing is needed as described below.

## **Factual Summary**[1]

Ecologic and BTE are business competitors that "are both involved in the business of supplying the plastic industry with chemical additives, which, when added to plastic resins normally used in the manufacture of plastics, promotes biodegradability in certain disposal environments." [Doc. 10, ¶ 12.] Ecologic is a Delaware limited liability company based in Illinois that was formed in January 2010, and formerly known as Ec'Eau, LLC. [Doc. 10, ¶ 7.] BTE is a New Mexico limited liability company, whose President and CEO is Defendant John Lake ("Lake"). [Doc. 10, Ex. E, ¶¶ 1, 2.] Lake began BTE as a sole proprietorship in 2003, and BTE LLC was formed on October 12, 2005. [Doc. 10, Ex. E, ¶¶ 9, 10.] Respondents Laura Burkett and Jenna Ramos are Lake's daughters and allegedly were Senior Account Sales Managers with BTE. [Doc. 10, ¶¶ 10, 11.]

There is a related state court lawsuit, although the parties and party alignment are not identical to the federal court lawsuit. Almost one month before Ecologic filed this Complaint to compel arbitration in federal court, BTE and Lake filed a lawsuit against Defendants Samuel Adams ("Adams"), Joy Evans, and Nevin Bahadirli in the Second Judicial District Court in the County of New Mexico (No. CV 2010 13593) ("state court"). On January 4, 2011, BTE and Lake filed an Amended Complaint for Damages and Injunctive Relief in state court, naming the same Defendants, along with James Rooney ("Rooney"), Carl Doellstedt ("Doellstedt") and John/Jane Does 1-10. [Doc. 10, Ex. E, state court Amended Complaint.] BTE and Lakes' state court Amended Complaint

---

[1]The factual summary contains allegations taken from the parties' pleadings, as noted, and are not deemed to be uncontested.

sets forth claims of breach of fiduciary duty, civil conspiracy, intentional interference with contract, interference with prospective advantage, Unfair Trade Practices, misappropriation of trade secrets in violation of Uniform Trade Secrets Act, spoliation of evidence, and unjust enrichment.  In the state court action, BTE and Lake seek an award of monetary damages and injunctive relief against Defendant Adams, including, *inter alia*, enjoining Adams from using any proprietary information obtained through Adams' prior employment with BTE. [Doc. 10, Ex. E, p. 14.]

The Defendants named in the state court lawsuit are described as follows.  Adams, while now with Ecologic, was Senior Vice President of Marketing and Sales for BTE prior to his resignation from BTE in November 2010. [Doc. 10, Ex. E, ¶¶ 3, 18.] BTE alleges that Adams was an officer and employee of BTE, occupied a position of trust, and had access to proprietary information belonging exclusively to BTE. [Id., ¶¶ 12, 13.] Evans is the domestic partner of Adams and allegedly acted as Adams' co-conspirator with respect to BTE's website ad domaine information. [Id., ¶ 4.]

Doellstedt and Rooney purportedly were employed with Ecologic or its predecessor, Ec'Eau. Doellstedt signed the November 22, 2009 Distributor Agreement as an "authorized person" for Ec'Eau with BTE. [Doc. 1, Ex. A.] According to BTE, in about October 2010, Doellstedt and Rooney were in business discussions with BTE concerning a relationship between BTE and the distributor managed by Doellstedt and Rooney, known as Ecologic. [Doc. 10, Ex. E, ¶ 20.]

In the state court Amended Complaint, Adams allegedly met with Doellstedt and Rooney in this same time frame for purposes of discussing a competing business with BTE, in which Adams, Doellstedt, and Rooney all would be involved. [Id., ¶ 20.] According to BTE, former BTE vice president Adams unlawfully used information and contacts from his employment with BTE to develop the new company with Doellstedt and Rooney, *i.e.,* Ecologic, formerly Ec'Eau.

**Procedural Summary**

**I.**     *Federal Lawsuit to Compel Arbitration (Ecologic v. BTE, et al.)*

On December 20, 2010, Ecologic filed its complaint to compel arbitration in federal court. [Doc. 1.] Ecologic's January 11, 20011 Amended Complaint seeks to compel arbitration in accordance with the Federal Arbitration Act, with respect to all claims Ecologic has against Respondents and all claims Respondents have against Ecologic. In support of its position, Ecologic attached to its Complaint a redacted copy of a December 22, 2009 "Exclusive License and Distributor Agreement (as amended)" ("Distributor Agreement"), entered into by BTE and Ecologic. [Doc. 1, Ex. A.] The Choice of Law/Dispute Resolution portion of the Distributor Agreement, signed by John Lake, CEO and President of BTE and Carl Doellstedt, "Authorized Person" of Ec'Eau, contains an agreement to arbitrate "[a]ny controversy or claim arising under or related to this Agreement" "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." [Doc. 1, Ex. A, ¶ 18.] Under the arbitration provisions of the Distributor Agreement, the "Distributor hereby waives any rights it may otherwise have to assert any rights or defenses under the law of any other jurisdiction or to require that litigation brought by or against it in connection with this Agreement be conducted in the courts or other forums of any other jurisdiction." [Id.]

The federal lawsuit is in the initial stages of litigation. Ecologic submitted with its First Amended Complaint a Proposed Order compelling arbitration. [Doc. 10, Ex. D.] The draft Order proposes that this Court additionally hold that all claims filed by BTE against Rooney and Doellstedt in the state court action be subject to the arbitration provision in the Distributor Agreement. [Id., ¶ 3.] The Motion to Compel Arbitration is fully briefed.

On January 25, 2011, Respondents (BTE, et. al.) submitted their opposition brief opposing arbitration in federal court and opposing arbitration of the claims they brought in the state court action. [Doc. 18.]  They admitted that some portions of the Ecologic/BTE Distributor Agreement were attached to Ecologic's Complaint.

**II.**   *State Court Action for Damages and Injunctive Relief (BTE and Lake v. Adams, Rooney, Doellstedt, et al.)*

On November 29, 2010, about three weeks before the federal lawsuit was filed by Ecologic, BTE filed the state court action against the Defendants described above.  On December 3, 2010, the state court apparently entered a TRO requiring Defendants Adams and Evans to take certain actions.  (12/6/2010 electronic docket entry in state court action.)[2]  On January 7, 2011, the state court modified the TRO, ordering that Defendant Adams and his agents, etc. were restrained from using or disclosing to any person the formulation, production or manufacturing of existing BTE products or products in development or customer data, etc.  BTE posted a cash surety in the amount of $15,000.  (1/7/2011 electronic docket entry.)

On December 7, 2010, Defendants Adams, et al. filed a motion to compel arbitration in the state court proceeding.  (12/7/2010 electronic docket entry.)  That expedited motion was fully briefed by January 14, 2011 (1/14/2011 electronic docket entry), but the parties then filed supplemental briefing related to the arbitration request.  (1/28/2011, 2/4/2011, 2/11/2011 electronic docket entries.)  It is not clear from the state court docket whether that court has ruled on the motion to compel arbitration.  However, in an Order entered February 17, 2011, the state court extended the

---

[2]Court may judicially notice records of sister courts.  *See* St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may take judicial notice of its own records as well of those of other courts, particularly in closely-related cases).

earlier restraining order against Adams "until Arbitrator is Appointed and Authorized to Act." (2/17/2011 electronic docket entry.)

In addition, Defendants Rooney and Doellstedt filed a motion to dismiss for lack of personal jurisdiction, but the motion is not yet fully briefed. The state court lawsuit is ongoing.

### Ecologic's Motion to Compel Arbitration (federal lawsuit)[3]

Ecologic contends that all claims relate to the Distributor Agreement between BTE and Ecologic and are subject to arbitration, whether they are brought in this federal lawsuit, raised in the formal demand for arbitration, or asserted in the state court action by BTE. Ecologic further claims that BTE's addition of Defendants Rooney and Doellstedt in the state court action violates the arbitration provision of the Distributor Agreement. [Doc. 10, p. 2.] Ecologic's claims against BTE include an allegation that BTE misrepresented its product, thereby inducing BTE to expend over two million dollars in attempting to market BTE's product. According to Ecologic, BTE has now admitted they are "essentially insolvent" and cannot deliver the products in the quantities or at the prices they originally represented. [Id., p. 6.] Ecologic claims to have terminated the Distribution Agreement on November 23, 2010. [Id.] Since termination of the Distribution Agreement, Ecologic asserts, *inter alia*, that BTE has embarked on a scheme to harm Ecologic's reputation and interfere with its contractual relations.

---

[3]The Court also observes that Ecologic filed a demand for arbitration pursuant to the Distribution Agreement's arbitration clause on December 6, 2010. Ecologic sought an award in excess of two million dollars. [Doc. 1, Ex. B.] On December 8, 2010, Ecologic filed an amended arbitration demand purportedly after learning of additional wrongful conduct by BTE. [Doc. 1, Ex. C.] Ecologic contended it lost over two million that it invested in the distribution of marketing of BTE's product. Ecologic also sought equitable relief. The Amended Arbitration Demand was "perfected" by the American Arbitration Association and assigned case number 76 117Y00325 10. [Doc. 10, ¶ 25.] It is not clear how that matter is progressing.

BTE, et al., oppose Ecologic's motion to compel arbitration in the federal lawsuit. They argue, in part, that while federal policy favors arbitration agreements, such agreements must not be so broadly construed to encompass claims and parties not intended by the original contract. In other words, Lake's daughters, Laura Burkett and Jenna Ramos, were not signatories to the Distribution Agreement, and therefore, claims against them should not be subject to arbitration. While Lake was a signatory, BTE apparently argues the Distribution Agreement's arbitration clause does not bind him in an individual capacity. BTE challenges Ecologic's position that agency principles should apply to this action in requiring arbitration of all the claims against all parties.

BTE also opposes Ecologic's request to arbitrate BTE's state court claims against Rooney and Doellstedt. BTE asserts that Rooney and Doellstedt are sued individually as joint tortfeasors in the state action, but not for any actions taken as officers, directors, or agents of Ecologic. Moreover, according to BTE, Rooney's and Doellstedt's alleged wrongful conduct does not arise out of the Distribution Agreement. [Doc. 18, p. 6.] Instead, BTE alleges that Rooney and Doellstedt are being sued in state court relating to "aiding and abetting Mr. Adams in his wrongdoing in violation of his Bio-Tec LLC Operating Agreement – which is distinct from the Distribution agreement between Ecologic and Bio-Tec." [Doc. 18, pp. 6-7.] BTE informs that the state court has held hearings, received evidence and pleadings, and "is in the process of determining, on or before February 16, 2011, in that case, which claims and parties are subject to the LLC Operating Agreement arbitration clause. The Distribution Agreement arbitration clause has not been litigated in the State Court action, nor have Petitioners [Ecologic?] raised the issue before the State Court." [Doc. 18, p. 7.]

This is the first mention of two separate arbitration clauses or agreements, and the first time the Court is informed that the state court request for arbitration filed by Ecologic concerned a

7

different "Operating Agreement arbitration clause." In its reply [Doc. 19], Ecologic did not address this specific argument by BTE. Thus, in the Court's request for additional briefing (*see infra*), the parties should explain the significance, if any, of two different Agreements or arbitration clauses and how they affect the state and federal court actions or the requests to arbitrate.

In its response, BTE also briefly argues that, as a practical matter, it would be improper for the federal court to interfere with the state court proceeding. First, BTE asserts that Defendants in the state court action should not be subject to arbitration under an arbitration clause of the Distribution Agreement, because that Agreement is not raised in the state court action. Second, BTE argues that the Rooker-Feldman doctrine bars the federal court from interfering with the state court proceeding.

The Court is unpersuaded that Rooker-Feldman requires federal court abstention under the circumstances of this case. In Lambeth v. Miller, 363 F. App'x 565, 567 (10th Cir. Jan. 27, 2010) (unpublished), the Tenth Circuit Court of Appeals discussed Rooker-Feldman.

> The Rooker-Feldman doctrine prevents federal courts from assuming jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). In other words, "[t]he Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments," Bolden v. City of Topeka, 441 F.3d 1129, 1139 (10th Cir. 2006), and it thus bars claims, like [plaintiff's], that seek to upset or undo prior state-court judgments, *see* Erlandson v. Northglenn Mun. Court, 528 F.3d 785, 789 (10th Cir. 2008), *cert. denied*, --- U.S. ----, 129 S.Ct. 928, 173 L.Ed.2d 133 (2009).

This is not a case where the "state-court loser" is complaining of injuries caused by state-court judgments or where the state-court loser is appealing a state court judgment. In the ongoing state court action, there has been no judgment.

However, in the briefing, neither party addressed whether the Younger doctrine might require federal court abstention. Under Younger v. Harris, 401 U.S. 37 (1971), the federal court must abstain where: (1) there is an ongoing state civil proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. Amanatullah v. Colo. Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotation marks omitted). Once all three conditions are met, Younger abstention is non-discretionary. In other words, absent extraordinary circumstances, a district court is required to abstain when the three requirements are met. Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1215 (10th Cir. 2003).

In this case, there is an ongoing state civil proceeding involving some of the same parties. Indeed, there are requests to compel arbitration in both the state and federal proceedings brought by BTE. The underlying claims for which the parties seek resolution are generally state-law claims.

The Court will require briefing from both parties as to whether Younger requires the federal court to abstain based, in part, on the ongoing state court proceeding. Because BTE raised the issue of federal court abstention in its response [Doc. 18, p. 7], BTE should filed its opening brief within fourteen (14) days after entry of this Order. Standard response and reply times apply. The briefs should not exceed ten (10) pages.

The parties are specifically required to address Younger abstention, its requirements, and any other applicable abstention doctrine in relation to the federal and state court proceedings at issue.[4] To the extent the doctrine of Younger abstention is analyzed in the context of a request to compel

---

[4] If the related proceeding in Illinois state court is pertinent to the issue of abstention, the parties should also discuss that proceeding and its status.

arbitration, the parties should bring those cases to the Court's attention. They also should discuss the significance, or lack thereof, of the different arbitration clauses in the Distribution Agreement and Operating Agreement. They should provide the Court with an update as to any rulings by the state court with respect to BTE's motion to compel arbitration and BTE's demand for arbitration that appears to be proceeding. In other words, to the extent that there is an ongoing arbitration proceeding, the parties should inform the Court what claims are being arbitrated and whether all claims raised in the state and federal proceedings could be resolved in the arbitration proceeding. If all claims are not being arbitrated, the parties should provide explanations as to why any pertinent claim(s) cannot be arbitrated.

IT IS THEREFORE ORDERED that the BTE must file an opening brief addressing the issues discussed above by no later than **March 22, 2011.** Standard response and reply deadlines apply.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge