# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ECOLOGIC SOLUTIONS, LLC
(formerly known as Ec'Eau, LLC),
a Delaware limited liability company,

                    Petitioner,

vs.                                              Civ. No. 10-1220 JCH/LFG

BIO-TEC ENVIRONMENTAL, LLC,
a New Mexico limited liability company,
JOHN LAKE, an individual, LAURA
BURKETT, an individual, and JENNA
RAMOS, an individual,

                    Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### I. Findings

1.     In 2003, John Lake founded Bio-Tec Environmental, LLC ("Bio-Tec") as a sole

       proprietorship. Bio-Tec reorganized as a limited liability company in 2004. [Doc. 30;

       Exh. 2 at 1]. Mr. Lake is Bio-Tec's CEO, President, and Owner, as well as its

       majority or sole member. [See Doc. 1at 3; Exh. A at 4, 5].

2.     Bio-Tec is in the business of practicing environmental stewardship and, to that end,

       produces additives that, when combined with plastic materials, cause those materials

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

to bio-degrade at a much more rapid pace than they otherwise would. [Doc. 30; Exh. 2 at 1].  Enhancing the speed at which plastics degrade could have a substantial and beneficial effect on waste management and environmental concerns.

3.      Although it is not clear precisely when they joined forces, at some point Mr. Lake, who has degrees in chemistry and biology, teamed up with Samuel Adams who, while lacking a science background, was "pursuing entrepreneurial opportunities." [Id.; Exh. 2 at 1].  Mr. Adams became Bio-Tec's Senior Vice President of Marketing and Sales. [Doc. 10; Exh. E at 1].

4.      Mr. Lake and Mr. Adams are named in Bio-Tec's Operating Agreement ("the Operating Agreement") as the company's initial members. [Doc. 30; attached "Operating Agreement" at 2].

5.      The Operating Agreement includes a "Disputes Among Members" clause, by which

> [t]he Members agree that in the event of any dispute or disagreement solely between or among any of them or arising out of, or relating to or in connection with this Agreement or the Company or its organization, formation, business or management ("Member Dispute"), the Members shall use their best efforts to resolve any dispute arising our of or in connection with this Agreement by good-faith negotiation and mutual agreement.

[Id.; attached "Operating Agreement" at 4].

6.      In or about 2004, Mr. Lake instructed Mr. Adams to acquire an Internet domain name and establish an online account to host Bio-Tec's web site.  Mr. Adams chose the name "bio-tec.biz," which operated through a Yahoo! account.  Mr. Adams' live-in

2

girlfriend, Joy Evans, was named as the account administrator even though, according to Mr. Lake, "[s]he had absolutely nothing to do with the business. . . ." [Id.; attached affidavit of John Lake at 1-2, 3].

7.    Through its web site, Bio-Tec engaged in such activities as (1) communicating with its customers; (2) answering customer inquiries; and (3) filling product orders.  Bio-Tec paid "significant sums of money" to search-engine prioritizers to increase its chances of being at the top of results lists that would appear following word searches. According to Bio-Tec, this investment paid off substantially. [See id.; Lake aff. at 2].

8.    Bio-Tec used its web site continuously from its launch until Mr. Adams shut it down on November 15, 2010, which was 6 days after he tendered his resignation from Bio-Tec, [id.; Lake aff. at 2], and approximately 2 weeks after he sent his girlfriend an email message in which he explained that it "[l]ook[ed] like [he] got a deal with [C]arl and Jim and a new company to be formed." [Id.; Exh. B].

9.    "Carl" and "Jim" are Carl Doellstedt and James Rooney, who are managers of Ecologic Solutions LLC ("Ecologic").[2] [Doc. 19 at 1].

10.   At the time of Mr. Adams' resignation, Mr. Lake directed him to rename bio-tec.biz's account administrator as someone within Bio-Tec, and also to switch the account's email access from Ms. Evans' address. [Doc. 30; Lake aff. at 3].

11.   While he initially complied with Mr. Lake's directive, Mr. Adams soon after regained

---

[2]  In its *First Amended Verified Petition to Compel Arbitration*, Ecologic asserts that Mr. Rooney is Ecologic's President, while Mr. Doellstedt is "also affiliated with Ecologic. . . ." [Doc. 10 at 9].

access to the online account; blocked Bio-Tec from entering it; deleted emails and business records; and shut the site down completely.  According to Bio-Tec, since November 15, 2010, the site for bio-tec.biz shows simply that it is "under construction." [Id.; Lake aff. at 3].

12.   It was approximately only one year earlier, on December 22, 2009, that Bio-Tec and Ecologic executed an Exclusive License and Distributor Agreement ("the Distributor Agreement"), the terms of which provided, in part, that "Ecologic obtained the exclusive right to market and distribute Bio-Tec's EcoPure line of products, and Bio-Tec obtained the benefit of Ecologic's expertise in the flexible packaging and plastics industry, as well as its sales, marketing, and distribution channels." [Doc. 1; Exh. A; Doc. 10 at 1, 5].

13.   On November 23, 2010, Ecologic unilaterally terminated the Distributor Agreement on the ground that Bio-Tec had fraudulently induced Ecologic to enter into the contract in the first instance. [Id. at 6].

## II. Procedural History

14.   On November 29, 2010, Mr. Lake and Bio-Tec filed a complaint in the Second Judicial District Court, County of Bernalillo, State of New Mexico, against Mr. Adams and "John/Jane Does 1-10." [Doc. 30 at 3].

15.   On December 20, 2010, after its demand to arbitrate was refused, Ecologic filed its *Verified Petition to Compel Arbitration* in this Court, naming as respondents Bio-Tec; Mr. Lake; and Laura Burkett and Jenna Ramos, Senior Sales Account Managers with

Bio-Tec who also are Mr. Lake's daughters.[3] [See Doc. 1]. According to Ecologic, Bio-Tec's fraudulent misrepresentations as to its (1) finances; (2) proprietary products and ability to secure patents; and (3) general ability to partner with Ecologic to compete in the marketplace induced Ecologic to enter into the Distributor Agreement that Ecologic says it subsequently and justifiably terminated. [See id. at 4-5]. Ecologic asserts that after it terminated the Distributor Agreement, Bio-Tec engaged in a course of conduct designed to harm Ecologic's reputation and tortiously interfere with Ecologic's contractual and prospective business relationships. [Id. at 6].

16. As relief, Ecologic seeks (1) money damages, as well as (2) equitable relief in the form of (i) a rescission; (ii) "a [d]eclaration that there is no [c]onfidential [i]nformation as defined under the [Distributor] Agreement;" and (iii) a declaration that the active ingredients, formulae, processes, compounders, and suppliers from which Bio-Tec's plastic additives are manufactured do not amount to trade secrets or other protectible proprietary intellectual property. [Id.; Exh. B; Exh. C at 3-4].

17. On January 4, 2011, Mr. Lake and Bio-Tec amended their state-court complaint to add, among others, Ms. Evans, Mr. Rooney, and Mr. Doellstedt as named defendants. [Doc. 10; Exh. E at 1].

18. In the amended complaint, Mr. Lake and Bio-Tec assert claims for (1) breach of fiduciary duty; (2) civil conspiracy/aiding and abetting; (3) intentional interference

---

[3] For ease, these respondents are collectively referred to here as Bio-Tec, unless otherwise indicated.

with contract; (4) interference with prospective economic advantage; (5) unfair trade practices; (6) misappropriation of trade secrets; (7) spoliation; and (8) unjust enrichment. [Id.; Exh. E at 6-13].

19.    In short, and as is relevant here, Mr. Lake and Bio-Tec assert that Mr. Adams conspired with Mr. Rooney and Mr. Doellstedt "in a course of conduct unlawfully to divert the business, business opportunities and profits of [Bio-Tec] from [Bio-Tec] to himself and others, and to disrupt, destroy and take over [Bio-Tec's] business." [Id.; Exh. E at 4].

20.    With respect to Count III (tortious interference with contract), Bio-Tec alleges, in part, that Mr. Adams, with knowledge of Bio-Tec's "existing contracts with its *distributors*[,]" acted with his co-conspirators (Mr. Rooney and Mr. Doellstedt), to interfere with, and induce third-party violations of, the terms of those agreements. [Id.; Ech. E at 8-9 (emphasis added)].

21.    As relief, Mr. Lake and Bio-Tec seek monetary damages (including, but not limited to, actual; statutory; treble; and punitive damages), and injunctive relief (1) prohibiting Mr. Adams from using any proprietary information he obtained in his role as a fiduciary of Bio-Tec; (2) compelling Mr. Adams to return all such information in his possession; and (3) enjoining Mr. Adams from interfering with Bio-Tec's access to and use of its web site. [Id.; Exh. E at 14].

22.    One week after Mr. Lake and Bio-Tec amended their state-court complaint, Ecologic, on January 11, 2011, filed its *First Amended Verified Petition to Compel Arbitration*,

insisting that the addition of Mr. Rooney and Mr. Doellstedt as named defendants in the state-court action constituted "a direct violation of the arbitration provision contained in Section 18 of the Distributor Agreement." [Doc. 10 at 2].

23.   The state-court action progressed, with hearings; the filing of motions; and the entry of temporary restraining orders, modified TROs, and other orders. [See Doc. 30; attached *Temporary Restraining Order* of Dec. 3, 2010; *Order Extending Temporary Restraining Order* of Dec. 13, 2010; *Order* of March 14, 2011 on Mr. Adams' expedited motion to compel arbitration].

24.   Importantly, on January 25, 2011, State District Court Judge C. Shannon Bacon sent a letter to counsel in response to a request to determine "whether the issues asserted in the Complaint or Amended Complaint in this matter are subject to arbitration. . . ." [Id.; Exh. 1 at 1].

25.   Judge Bacon's review of supplemental briefs submitted by the parties persuaded her that Bio-Tec's claims against Mr. Adams were indeed subject to the Operating Agreement's "Disputes Among Members" clause, and she directed counsel to prepare and submit a form of order reflecting her decision. [Id.; Exh. 1 at 2, 5].

26.   Thereafter, on March 16, 2011, Mr. Rooney and Mr. Doellstedt removed the matter to this Court on the ground that Judge Bacon's determination meant that Bio-Tec no longer had claims that could be pursued against Mr. Adams in state court; consequently, argued Mr. Rooney and Mr. Doellstedt, citizens of Illinois and California, respectively, "Bio-Tec's only remaining claims [were] against defendants

who [were] not citizens of any state of which any plaintiff [was] a citizen." [Doc. 1 at 2 in 11cv236 JB/ACT].

27.    Because the *Civil Cover Sheet* attached to the notice of removal does not indicate that it is related to the instant case, which had been filed three months earlier, the removal was assigned to a different federal district judge, with a separate cause number, 11cv236 JB/ACT. [See id; attached *Civil Cover Sheet*].

28.    On March 4, 2011, and in light of the ongoing state-court proceedings, the undersigned Magistrate Judge directed the parties to submit additional briefing on the issue of abstention, with particular attention to be paid to the doctrine announced in Younger v. Harris, 401 U.S. 37 (1971). [Doc. 21 at 9-10].

29.    After the opening brief and the response were filed, but before a reply was due, Bio-Tec, in cause number 11cv236 JB/ACT, filed an *Expedited Motion to Remand* [ Doc. 14]. Accordingly, by order entered April 6, 2011, the remainder of the briefing on the abstention issue was stayed pending resolution of Bio-Tec's motion to remand. [See Doc. 32].

30.    On May 31, 2011, the Court granted the motion to remand, and a final judgment was entered the same day. [See Docs. 40 and 41 in 11cv236 JB/ACT].

31.    On June 6, 2011, this Court lifted its stay and directed Bio-Tec to file its reply no later than June 23, 2011. [See Doc. 34]. With the filing of Bio-Tec's reply, briefing was confirmed complete on June 24, 2011. [See Docs. 35 and 36].

## III. Analysis

By *Order of Reference* entered February 25, 2011, the assigned District Judge referred this matter to the undersigned Magistrate Judge to submit findings of fact and recommendations for the disposition of Ecologic's *First Amended Verified Petition to Compel Arbitration*. [Doc. 20]. Before addressing the merits of the petition, however, it is necessary to resolve the issue as to which the parties recently completed briefing, *to wit*, whether it is appropriate for this Court to abstain, or decline to exercise its jurisdiction, in light of the ongoing state-court proceedings.

### A. Whether Abstention is Appropriate Under the Circumstances Presented

As previously stated, the Court instructed the parties to pay particular attention in their supplemental briefing to the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971). [Doc. 21 at 9-10]. That doctrine states that a federal court must abstain from exercising jurisdiction when (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, meaning matters that traditionally look to state law for their resolution or implicate separately articulated state policies. Brown ex rel. Brown v. Day, 555 F.3d 882, 887 (10th Cir. 2009).

Ecologic and Bio-Tec agree that Younger abstention is inapplicable, [see Doc. 31 at 1; Doc. 35 at 6], and case authority supports such a conclusion. See, e.g., Johnson & Johnson Vision Care, Inc. v. Kenneth Crosby N.Y., LLC, 2010 WL 1030121, at *6 n.15 (M.D.Fla.. Mar. 17, 2010) (explaining that, in specific context of petition to compel arbitration under

the FAA, <u>Younger</u> abstention is inappropriate because no compelling state interest exists in

having state court, instead of federal court, decide case).   Instead, the parties submit—and

the Court agrees—that <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp</u>., 460 U.S.

1 (1983) and <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976)

provide a more fitting framework under which to consider these matters.

As the Tenth Circuit has explained, "[t]he <u>Colorado River</u> doctrine applies to

'situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state

and federal courts.'"   <u>Fox v. Maulding</u>, 16 F.3d 1079, 1080 (10th Cir. 1994) (*quoting*

<u>Colorado River</u>, 424 U.S. at 817)).   Yet in <u>Colorado River</u>, the United States Supreme Court

cautioned that

> [a]bstention from the exercise of federal jurisdiction is the
> exception, not the rule. The doctrine of abstention, under which
> a District Court may decline to exercise or postpone the exercise
> of its jurisdiction, is an extraordinary and narrow exception to
> the duty of a District Court to adjudicate a controversy properly
> before it. Abdication of the obligation to decide cases can be
> justified under this doctrine only in the exceptional
> circumstances where the order to the parties to repair to the State
> court would clearly serve an important countervailing interest.

<u>Colorado River</u>, 424 U.S. at 813 (internal quotation marks omitted).   Thus, the <u>Colorado</u>

<u>River</u> doctrine allows a federal court to dismiss or stay a matter before it in deference to

pending state court proceedings only when a dismissal or stay is justified in light of wise

judicial administration, and with an eye toward the conservation of judicial resources and

comprehensive disposition of litigation.   <u>Fox</u>, 16 F.3d 1080.   Accordingly, the <u>Colorado</u>

<u>River</u> doctrine is not a true form of abstention, as abstention is justified by "vindicat[ion of]

'Our Federalism' [and rests upon] considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions." Rienhardt v. Kelly, 164 F.3d 1296, 1302 (10th Cir. 1999) (*quoting* Colorado River, 424 U.S. at 817). In any case (and regardless of the terminology used), the decision to refrain from exercising jurisdiction properly conferred upon it is one that a federal court should make only in the most exceptional of circumstances, as detailed more fully below. See Fox at 1081.

The first step in determining the applicability of the Colorado River doctrine requires a decision on whether the state and federal proceedings are "parallel." "Suits are parallel if *substantially* the same parties litigate *substantiall*y the same issues in different forums." Allen v. Board of Educ., Unified Sch. Dist., 68 F.3d 401, 403 (10th Cir. 1995) (emphasis added). Importantly, however, "parallel" is not synonymous with "identical" and, to be sure, "in the Colorado River context . . . exact identity of parties and issues is not required." United States v. City of Las Cruces, 289 F.3d 1170, 1182 (10th Cir. 2002). The Court's task in assessing the substantial sameness noted in Allen is simply "to examine the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings." Fox, 16 F.3d at 1081 (emphasis in original).

If the Court determines that the state and federal proceedings are parallel:

> [I]t must decide whether to abstain. Abstention is appropriate where (1) "a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law[;]" (2) "difficult questions of state law" are present which impact "policy problems of substantial public

> import whose importance transcends the result in the case then at bar[;]" or (3) "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings."

Allen, 68 F.3d at 403.

As stated, exceptional circumstances must be present before a federal court may forego exercising its jurisdiction in deference to state-court proceedings, and the following non-exhaustive list of factors should be considered in deciding whether such circumstances exist: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. Fox, 16 F.3d at 1082. This is not a "mechanical checklist," and no single factor is dispositive. The factors should be carefully balanced, and the weight given to any one factor may vary from case to case. Id. Finally, should the Court determine that abstention is appropriate, the Tenth Circuit expresses a preference for a stay—rather than a dismissal—of the federal action pending the outcome of the state case, explaining that, "[i]n the event the state court proceedings do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action." Id. at 1083.

Turning to the facts of this case, there exists a state-court proceeding brought by Mr. Lake and Bio-Tec against Mr. Lake's former partner (and Bio-Tec's former member), Samuel Adams. James Rooney and Carl Doellstedt, among others, also are named as defendants. Ecologic is not a named party in the state-court action, but Ecologic's managers, Mr. Rooney and Mr. Doellstedt, are named parties. Mr. Lake and Bio-Tec charge these

defendants with (1) breach of fiduciary duty; (2) civil conspiracy; (3) intentional interference with contract; (4) interference with prospective advantage; (5) unfair trade practices; (6) misappropriation of trade secrets; (7) spoliation of evidence; and (8) unjust enrichment in connection with Mr. Adams's alleged misappropriation of proprietary information and trade secrets belonging to Bio-Tec as part of Mr. Adams's scheme to leave Bio-Tec, join Ecologic, and compete directly with Bio-Tec. [Doc. 10; Exh. E].  More specifically, Bio-Tec alleges that

> while Adams was an employee and officer of BTE, Adams conspired with others (including Rooney and Doellstedt) to misappropriate BTE's confidential information, sabotage BTE's operations, and to simultaneously establish a competing business in breach of duties Adams owed to BTE. Adams abruptly resigned from BTE on November 9, 2010. Adams immediately started a competing company, and entered into a licensing agreement with BTE's own distributor, Petitioner Ecologic Solutions, LLC ("Ecologic"), to bring a "competing product to market." Ecologic then declared that it was unilaterally terminating its distribution agreement with BTE (breaching a non-disclosure agreement and covenant not to compete). Adams and/or Ecologic then sent a mass email to BTE's customers, shut down BTE's website, deleted BTE's email accounts and electronic data, and then worked actively to prevent BTE from restarting its operations. This was a rapid, complex and coordinated effort on multiple fronts to steal BTE's business, the full details of which have yet to come to light.

[Doc. 30 at 3-4].  Through its amended state-court complaint, Bio-Tec seeks damages and injunctive relief, some of which has already been granted in the form of temporary restraining orders and modified TROs prohibiting Mr. Adams' involvement in certain conduct with respect to Bio-Tec. [See Doc. 30; attached TRO filed 12/3/2010 at 4:22 pm].

By contrast, in its *First Amended Verified Petition to Compel Arbitration*, Ecologic asserts that Bio-Tec's fraudulent misrepresentations as to Bio-Tec's (1) finances; (2) proprietary products and ability to secure patents; and (3) general ability to partner with Ecologic to compete in the marketplace induced Ecologic to enter into the exclusive Distributor Agreement that Ecologic unilaterally terminated. [See Doc. 10 at 5-6].   In addition to compelling arbitration of its fraudulent-misrepresentation claims, Ecologic also seeks to compel arbitration of its claims that, post-termination, Bio-Tec and Mr. Lake and his daughters (1) defamed Ecologic;  tortiously interfered with Ecologic's business relations; and (3) impugned Ecologic's trademark.  [Id. at 6-7].  As relief, Ecologic seeks, among other things, damages and equitable relief in the form of a rescission, and declarations as to the (1) nonexistence of confidential information as defined under the Distributor Agreement, and (2) nonproprietary nature of Bio-Tec's products. [Id. at 8-9].

Before the Court can even properly reach the Colorado River factors, it "must determine whether the state and federal proceedings are parallel." Allen, 68 F.3d at 403.  Just as a lack of complete identity of parties and issues does not necessarily prevent a finding that state and court proceedings are parallel, neither should such proceedings automatically be deemed parallel "simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues."  Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st Cir. 1990).  In other words, some repetition is acceptable, and "the pendency of an overlapping state court suit is an insufficient basis in and of itself to warrant dismissal of a federal suit."  Id. at 12.

14

The Court reviewed and considered <u>Villa Marina</u> and finds it to be instructive because it is factually similar to the situation existing between Bio-Tec and Ecologic (albeit absent the arbitration clause).   In <u>Villa Marina</u>, a manufacturer of luxury boats, Hatteras International, terminated its exclusive dealership agreement with its dealer in Puerto Rico, Villa Marina, on the basis of Villa Marina's alleged questionable business ethics and poor sales.  <u>Villa Marina</u>, 915 F.2d at 8-9.  Hatteras then gave exclusive dealership rights to Yacht Sales of Puerto Rico, whose owner was Villa Marina's former sales manager.  <u>Id.</u> at 9.

Three separate lawsuits followed.  First, Hatteras sued Villa Marina in Puerto Rico Superior Court, seeking (1) a declaration that it was justified in terminating Villa Marina's dealer agreement, and (2) injunctive relief to prevent Villa Marina from interfering with Yacht Sales' sales.  <u>Villa Marina</u> 915 F.2d at 9.  Next, Villa Marina sued Yacht Sales and the president of Hatteras, again apparently in the Commonwealth court, alleging, *inter alia*, tortious interference with business relations (*i.e.*, Villa Marina's dealer agreement).  Finally, Villa Marina brought suit a few days later in federal court, charging Hatteras, its president, and its parent corporation with breach of contract, tortious interference with contract, and tortious interference with prospective business advantage. <u>Id.</u>  As is relevant here, the United States District Court for the District of Puerto Rico granted the defendants' motion "to dismiss or stay under <u>Colorado River</u> doctrine in light of the 'substantially similar' action pending in the Commonwealth court."  <u>Id.</u>

The First Circuit, however, reversed.  Citing the "narrowness" of the <u>Colorado River</u> doctrine and federal courts' "'virtually unflagging obligation . . . to exercise the jurisdiction

given them,'" <u>Villa Marina</u> 915 F.2d at 12 (*quoting* <u>Colorado River</u>, 424 U.S. at 817), the circuit faulted the district court for dismissing without properly weighing "the heavy presumption favoring the exercise of jurisdiction . . . *even in the face of duplication and judicial inefficiency*." <u>Id.</u> (emphasis added).  Although it concluded that it was "eminently reasonable at first blush" for the district court to have determined that, under the circumstances, deferring to the Commonwealth court proceedings would likely have avoided friction between jurisdictions, reduced inefficient use of judicial resources, and eased the financial burden on the litigants, the circuit nonetheless repeated that "[d]uplication and inefficiency are not enough to support a federal court's decision to bow out of a case over which it has jurisdiction." <u>Id.</u> at 13.  The matter was remanded to allow the district court to apply the correct standard (meaning that it was required to find that "exceptional circumstances," rather than "good cause," supported dismissal) and also to "giv[e] weight to the heavy presumption favoring the exercise of jurisdiction" in balancing the relevant <u>Colorado River</u> factors.  <u>Id.</u> at 13.

With respect to Bio-Tec and Ecologic, resolution of the issues and disputes between them will almost certainly involve some repetition and overlap since, broadly speaking, it is the disintegration of the business relationship between the two entities that gives rise to all claims now asserted, both here and in state court.  However, repetition and overlap are insufficient to justify a finding that substantially the same parties are litigating substantially the same issues, and that the state and federal proceedings are therefore parallel. <u>See</u> <u>New Beckley Min. Corp. v. International Union, United Mine Workers of Am.</u>, 946 F.2d 1072,

16

1074 (4th Cir. 1991) ("[S]ome factual overlap does not dictate that proceedings are parallel. . . ."). Yet a finding of parallelism is crucial, in the absence of which the Court need not even reach the issue of the applicability of the <u>Colorado River</u> factors. <u>See</u> <u>Allen</u>, 68 F.3d at 403 ("[if] the district court determines the cases are not parallel, it should proceed. If the cases are parallel, the court must decide whether to abstain."); <u>see also</u> <u>Hayes v. City of Columbus</u>, 2011 WL 2174973, at *4 (S.D.Ohio June 3, 2011) (declining to address <u>Colorado River</u> factors in light of threshold finding that state and federal proceedings were not parallel).

Turning first to the issues presented in the two proceedings, Bio-Tec's claims stem from Mr. Adams' defection and alleged conspiracy with Mr. Rooney and Mr. Doellstedt to misappropriate Bio-Tec's trade secrets and, in league with Ecologic, to compete directly against Bio-Tec. Ecologic, on the other hand, charges that Bio-Tec misrepresented its financial and business abilities to fraudulently induce Ecologic to enter an exclusive Distributor Agreement, then defamed Ecologic and tortiously interfered with Ecologic's business relations after Ecologic terminated the agreement. [Doc. 1 at 4-6]. While "the issues in the concurrent proceedings need not be identical to be substantially similar; rather, issues are 'substantially similar' when there is a substantial likelihood that the state litigation will dispose of all the claims presented in the federal case." Eric C. Surette, J.D., Annotation, *When Are Proceedings Parallel so as to Permit Federal Court Abstention Under Colorado River Water Conservation Dist. v. U. S.*, 176 A.L.R. Fed. 517 (2002).

The requested remedies also differ one from the other, even if the differences are not substantial.  While Bio-Tec seeks damages and injunctive relief, [see Doc. 10; Exh. E at 14], Ecologic seeks money damages, a rescission, and declarations concerning Bio-Tec's products. [See id. at 8].  The fact that the issues and the requested remedies differ counsels against a finding of parallel proceedings.  See New Beckley Min. Corp., 946 F.2d at 1074 (noting plaintiff's request for monetary damages in federal court but equitable relief in state court, and explaining that "[a] difference in remedies is a factor counseling denial of a motion to abstain.").

Finally, viewing the state-court proceedings, as it must, "*as they actually exist*. . . ." Fox, 16 F.3d at 1081 (emphasis in original), the Court cannot say that the parties in the two proceedings are substantially the same.  The parties in the state-court proceeding are, on the one side, Bio-Tec and Mr. Lake and, on the other side, Mr. Adams, Mr. Rooney, Mr. Doellstedt, John and Jane Does, and some of Mr. Adams' acquaintances. [See Doc. 10; Exh. E at 1].  In the federal proceeding, Ecologic is named as petitioner,[4] and Bio-Tec, Mr. Lake, and Mr. Lake's two daughters as respondents. [See Doc. 1 at 1].  Accordingly, as the state proceedings *actually exist*, Mr. Lake and Bio-Tec (but *not* his daughters) are the plaintiffs, and Mr. Rooney and Mr. Doellstedt (but *not* Ecologic), among others, are the defendants. In light of the differences between and among issues, remedies requested, and parties, the Court finds that the state and federal proceedings in question are not "parallel proceedings"

---

[4] Mr. Rooney and Mr. Doellstedt are *not* named as petitioners, although they describe themselves as "willing nonsignatories" to the Distributor Agreement.  [See Doc. 19 at 4].

as that term is used in the applicable authorities.

Having so found, the Court need not address the Colorado River factors that counsel for or against abstention.  See Allen, 68 F.3d at 403 (if district court similarly determines the cases are not parallel, it should proceed and, if cases are parallel, the court must then decide whether to abstain); see also See Hayes, 2011 WL 2174973, at *4.  With the Magistrate Judge's conclusion that these cases are not parallel, the analysis could properly stop here without consideration of the Colorado River factors.  Nonetheless, out of an abundance of caution and in the interest of completeness, an analysis of those factors follows.

## 1. The *Colorado River* Factors

As previously explained, "exceptional circumstances" must exist before a federal court may forego exercising its jurisdiction in deference to state-court proceedings.  In considering whether such exceptional circumstances are present, the Court should consider: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction.  Fox, 16 F.3d at 1082.

The first and second factors here are neutral ones, as there is no property involved, and the two fora are situated across the street from each other; thus, one forum is no more convenient than the other.  Both parties recognize that. [See Doc. 30 at 9 ("In the present case, neither court has assumed jurisdiction over any property, and both fora are equally convenient (they are across the street).") and Doc. 31 at 9 ("[T]here is no 'res' at issue [and] the federal forum is not inconvenient. . . .")].  Taking the remaining two factors in reverse

order, it actually is questionable as to which of the two courts first obtained jurisdiction, because a valid question is: jurisdiction over what or whom? When the state-court complaint was originally filed, it named as defendants Mr. Adams and John/Jane Does 1-10.  On January 4, 2011, Bio-Tec amended the state-court complaint to name Mr. Rooney and Mr. Doellstedt, among others, as defendants. But this was after Ecologic filed its December 20, 2010 petition to compel arbitration.  It is therefore not entirely clear which court first obtained jurisdiction over the claims and what defendants.  Thus, factor (4) does not heavily favor one court over the other court.

As for factor (3), however, it is critical to remember that the federal proceeding stems from a petition to compel arbitration, [see Docs. 1, 10], because "it is rarely appropriate for a federal court to abstain from ruling on a motion to compel arbitration." R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc., 3 Fed.Appx. 43, 45 (4th Cir. 2001).  Indeed, in the particular context of the Federal Arbitration Act ("FAA"), courts have determined that "even if some piecemeal litigation does result, that sometimes is the inevitable result of a congressional policy strongly favoring arbitration." Snap-on Tools Corp. v. Mason, 18 F.3d 1261, 1265 (5th Cir. 1994).  To be sure, in Moses H. Cone, the Supreme Court recognized that where there exists an arbitration agreement that does not bind all parties, piecemeal litigation may very well result.  The high Court went on to explain that "[t]hat misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." Moses H. Cone, 460 U.S. at 20 (emphasis in original).

In sum, therefore, factors (1) and (2) are neutral, and there exists a legitimate question concerning in whose favor factor (4) leans. Because, however, factor (3) weighs strongly in favor of ruling on Ecologic's motion to compel arbitration, even if the state and federal proceedings could be deemed parallel, abstention would not be appropriate here. Further, assuming that application of the Colorado River factors were to result in a close call, the Court must still give proper consideration to the heavy presumption in favor of exercising jurisdiction. See, e.g., Villa Marina, 915 F.2d at 8 (district court abused its discretion applying Colorado River factors but neglecting "to give due weight to the heavy presumption in favor of retaining jurisdiction."). When all factors and considerations are examined and balanced, the Court concludes that, under these circumstances, it would be improper to stay the federal proceedings in deference to the state-court action. Accordingly, the Court now turns to the issues presented by Ecologic's request to compel arbitration.

### B. Ecologic's *First Amended Petition to Compel Arbitration*

Through its petition, Ecologic seeks an order compelling arbitration "of the numerous claims that Ecologic has against Respondents, and any claims Bio-Tec or the other Respondents may have against Ecologic." [Doc. 10 at 1]. Ecologic contends that the arbitration provision contained in the Distributor Agreement is binding upon Mr. Lake, Ms. Burkett, and Ms. Ramos individually because they are, respectively, the sole member/sole owner of Bio-Tec, and "high ranking sales executives. . . ." [Id. at 12]. In addition to seeking to arbitrate its claims relating to the formation of the Distributor Agreement and those stemming from Bio-Tec's alleged post-termination wrongful conduct, [see id at 12], Ecologic

21

seeks to arbitrate Bio-Tec's claims against Mr. Rooney and Mr. Doellstedt on grounds that these claims (1) directly relate to the Distributor Agreement and fall squarely within its arbitration clause, and (2) are intertwined with the claims that Ecologic has asserted against Bio-Tec here. [Doc. 19 at 5, 6].

While the thrust of Bio-Tec's response to Ecologic's petition is that the *individual* Respondents (Mr. Lake, Ms. Burkett,and Ms. Ramos) are not signatories to the Distributor Agreement and, therefore, cannot be compelled to arbitrate, [see Doc. 18 at 4-6], Bio-Tec, *as entity*, apparently also objects to arbitration, [see Doc. 10 at 9, ¶ 29; Doc. 18 at 4, ¶ 15].[5] To the extent that Ecologic seeks to compel arbitration of Bio-Tec's claims against Mr. Rooney and Mr. Doellstedt, Bio-Tec contends that it would be improper for this Court to interfere with the state-court proceedings. [Doc. 18 at 7].

Ecologic seeks to compel arbitration pursuant to section 4 of the FAA, which provides, in pertinent part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28. . . ." 9 U.S.C. § 4. "The purpose of the [FAA] is 'to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to

---

[5] For example, in its response, Bio-Tec admits the allegation set forth in Ecologic's first amended petition that "*[a]ll* Respondents object to the authority and jurisdiction of the arbitral body specified in the Agreement over the disputes set forth in the notices of arbitration." [Doc. 10 at 9 (emphasis added); see also Doc. 18 at 4]. The argument that follows in the body of the response, however, focuses on the individual respondents' (Mr. Lake and his daughters) objection to being bound to the Distributor Agreement's arbitration provision. [See Doc. 18 at 5 ("Respondents John Lake, Laura Burkett and Jenna Ramos are not signatories to the Distribution Agreement. They did not and do not agree, in their individual capacities, to be bound by the arbitration clause set out in the Distributor Agreement.")].

enforce agreements to arbitrate.'" Hill v. Ricoh Americas Corp., 603 F.3d 766, 771 (10th Cir. 2010) (*quoting* Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446, 451 (4th Cir.1997)). The FAA also provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "section [2] announces 'a liberal federal policy favoring arbitration agreements.'" Shell Oil Co. v. CO2 Comm., Inc., 589 F.3d 1105, 1108 (10th Cir. 2009) (*quoting* Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).

Notwithstanding this policy in favor of arbitration, it is still contractual by nature and, therefore, a party cannot be required to submit to arbitration any dispute that he or she has not agreed so to submit. Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2nd Cir. 1995). Yet "[i]t does not follow . . . that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." Id. (*quoting* Fisser v. Int'l Bank, 282 F.2d 231, 233 (2d Cir.1960)). Instead, "a party may be bound by an agreement to arbitrate even in the absence of a signature" where principles of agency and contract dictate such a result. McAllister Bros., Inc. v. A & S Transp. Co., 621 F.2d 519, 524 (2nd Cir. 1980). This concept is important here, where Ecologic seeks to bind Mr. Lake, Ms. Burkett, and Ms. Ramos, as individuals, to the arbitration provision included in the Distributor Agreement.

While a court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party, see Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 131 (2nd Cir. 2003) (quotations omitted), where a *willing signatory* seeks to arbitrate with an

23

*unwilling non-signatory*, courts have recognized several theories by which the non-signatory may be bound to the arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.  See Thomson-CSF, 64 F.3d at 776. Additionally, a non-signatory may be bound on the ground that he or she was a third-party beneficiary of the agreement containing the arbitration provision.  See, e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 356 (5th Cir. 2003); see also Arthur Andersen LLP v. Carlisle, __ U.S. __, 129 S.Ct. 1896, 1902 (2009) (explaining that traditional principles of state law allow a contract to be enforced by or against nonparties through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel).  Keeping these standards in mind, the Court now turns to the facts of the instant case.

### 1. Whether Bio-Tec, the entity,[6] is bound by the arbitration provision included in the Distributor Agreement

The signature page from the Distributor Agreement has been attached to Ecologic's *Verified Petition to Compel Arbitration*, and it shows that Mr. Lake signed on behalf of Bio-Tec, while Mr. Doellstedt signed on behalf of Ecologic.  [See Doc. 1; Exh. A at unnumbered 3, 4].

---

[6] As stated above, see supra n.5, aside from admitting that "[a]ll Respondents object to the authority and jurisdiction of the arbitral body specified in the Agreement over the disputes set forth in the notices of arbitration[,]" [Doc. 10 at 9 (emphasis added); see also Doc. 18 at 4], no argument with respect to *the entity* Bio-Tec's obligation to arbitrate follows in its response to Ecologic's first amended petition. As a consequence, this Court is not entirely convinced that Bio-Tec, as entity, has not forfeited that argument.  See Kaplan v. First Hartford Corp., 716 F.Supp.2d 11, 18 (D.Me. 2010) (argument may be forfeited if not raised in timely manner before  tribunal having jurisdiction to determine it).  Again in the interest of making a complete record, the Court addresses the issue.

Although the Distributor Agreement, as attached, has been heavily redacted, the arbitration provision is included and provides, in pertinent part:

> **Choice of Law/Dispute Resolution:** This Agreement shall be deemed to be made in the State of New Mexico and in all respects shall be interpreted, construed, and governed by and in accordance with the laws of the State of New Mexico. *Any controversy of claim arising under or related to this Agreement shall be settled by arbitration*. . . .

[Doc. 1; Exh. 1 at unnumbered 1-2 (italicized emphasis added)].  Because *any* claim or controversy arising under or related to the Distributor Agreement is to be resolved through arbitration, this arbitration provision is broadly—rather than narrowly—drawn.  See Cummings v. FedEx Ground Package Sys., Inc., 404 F.3d 1258, 1262 (10th Cir. 2005) (defining as a "broad" arbitration provision one that refers to arbitration all disputes arising out of a contract).

When a provision is broad, a presumption of arbitrability arises.  See Cummings, 404 F.3d at 1261; accord Burlington Northern and Santa Fe Ry. Co. v. Public Service Co. of Oklahoma, 636 F.3d 562, 569 (10th Cir. 2010).  Given that nobody seriously appears to contest the arbitrability of Ecologic's claims against *Bio-Tec, as entity*, the Court determines that the claims asserted against Bio-Tec as entity are subject to arbitration.

## 2. Whether Bio-Tec's claims against Mr. Rooney and Mr. Doellstedt are subject to arbitration and whether they can compel such arbitration

The argument that Bio-Tec's claims against Mr. Rooney and Mr. Doellstedt are arbitrable and, further, that Mr. Rooney and Mr. Doellstedt can compel such arbitration is somewhat more complicated.

As willing non-signatories of the Distributor Agreement, Mr. Rooney and Mr. Doellstedt seek to compel Bio-Tec, an unwilling signatory, to arbitrate its claims against them under the "alternative estoppel theory." [Doc. 19 at 3]. The "alternative estoppel theory" takes into account the relations of persons, wrongs, and issues. Merrill Lynch Inv. Managers, 337 F.3d at 131. In other words,

> a signatory [may be] bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.

Thomson-CSF, 64 F.3d at 779 (internal quotations omitted); see also Brown v. General Steel Domestic Sales, LLC, 2008 WL 2128057, at *6-*7 (C.D.Cal. May 19, 2008).

As the Eleventh Circuit has explained,

> equitable estoppel applies when the signatory to a written agreement containing an arbitration clause  must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. *When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise[ ] out of and relate[ ] directly to the [written] agreement, and arbitration is appropriate*.

MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (internal quotations and citations omitted; emphasis added). Moreover, in the name of alternative estoppel, "courts have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the

agreement that the estopped party has signed." <u>Thomson-CSF</u>, 64 F.3d at 779 (emphasis in original).

Thus, inasmuch as nonsignatories Mr. Rooney and Mr. Doellstedt seek to compel signatory Bio-Tec to arbitrate its claims against them, Bio-Tec cannot avoid arbitration of its claim for tortious interference with contract, as asserted in Count III of its amended state-court complaint to the extent that Bio-Tec alleges that Mr. Adams "knew of [Bio-Tec's] existing contracts with its *distributors*, [and, along with] his co-conspirators, . . . intentionally interfered with those contractual relations[]" and also induced third-party violations of the terms of those agreements. [Doc. 10; Exh. E at 8-9 (emphasis added)]. Clearly, Bio-Tec's tortious-interference-with-contract claim, which specifically makes references to its "existing contracts with its distributors," among others, presumes the existence of the Distributor Agreement, meaning Bio-Tec's claim in Count III arises out of and relates directly to the Distributor Agreement. <u>See</u> <u>MS Dealer Service Corp.</u>, 177 F.3d at 947. Mr. Rooney and Mr. Doellstedt may therefore compel Bio-Tec to arbitrate the claims asserted against them in Count III of Bio-Tec's state-court complaint. This is so notwithstanding the ongoing state-court proceedings, since piecemeal litigation "sometimes is the inevitable result of a congressional policy strongly favoring arbitration." <u>Snap-On Tools Corp.</u>, 18 F.3d at 1265.

## **C. Whether Mr. Lake, Ms. Burkett, and Ms. Ramos, individually, are bound by the arbitration agreement**

Ecologic's final argument is that Mr. Lake, Ms. Burkett, and Ms. Ramos are obligated, in their individual capacities, to arbitrate the many claims that Ecologic has

27

asserted. [Doc. 19 at 8]. Although Mr. Lake (at least, he alleges, in his individual capacity) and his daughters are not signatories to the Distributor Agreement, Ecologic seeks to hold them to arbitration on grounds that (1) having directly benefitted from the Distributor Agreement, they now are estopped from refusing to comply with the arbitration provision; (2) they are agents of Bio-Tec; (3) they are third-party beneficiaries of the Distributor Agreement; (4) they are Bio-Tec's alter egos; and (5) because they engaged in "substantially interdependent and concerted misconduct" with Bio-Tec, arbitration between Ecologic and Bio-Tec would be meaningless absent their participation. [Doc. 19 at 8-12].

It is undisputed that John Lake is the CEO, President and Owner of Bio-Tec, as well as Bio-Tec's majority or sole member. [Doc. 10 at 3; Doc. 18 at 3]. As such, Mr. Lake necessarily controls Bio-Tec's activities and just as Bio-Tec, for reasons explained above, is bound by the arbitration provision, so is Mr. Lake.  See Benefits in a Card, LLC v. Talx Corp., 2007 WL 750638, at *3 (D.S.C. March 7, 2007) ("As 'principal owner, manager, president and chief executive officer' of the Plaintiff corporations, Stecker necessarily controls them. Since he is bound to arbitrate, so are they.").

Again, when Ecologic states claims against "Respondents," Ecologic refers not just to Bio-Tec the entity, but to Mr. Lake, Ms. Burkett, and Ms. Ramos as well. To be sure, as stated in Ecologic's *Amended Demand in Arbitration*, "Ecologic asserts claims of breach of contract; fraud; inducement regarding the [Distributor] Agreement, and ongoing fraudulent misrepresentations regarding Bio-Tec's ability to perform. . . ." [Doc. 1; Exh. C at 3]. Ecologic continues:

28

> Ecologic has also learned that Respondents have embarked on a scheme to harm Ecologic's reputation and tortiously interfere with Ecologic's prospective business relationships and contractual relationships. This includes communications and emails that were sent to a broad array of Ecologic's current and prospective customers that have falsely represented, *inter alia*, that Bio-Tec, rather than Ecologic, terminated the parties' [Distributor] Agreement, and that Bio-Tec terminated the agreement for ethical reasons. Additionally, Defendants have disparaged Ecologic's trademarked Eco-One™ products.

[Id.; Exh. C at 4]. Ecologic further asserts that one it its "large and significant . . . Illinois customer[s] was specifically told by Respondent Ramos not to purchase from Ecologic and that Ecologic lacked the ability to sell its product." [Doc. 10 at 7].[7]

Given that nonsignatories Mr. Lake, Ms. Burkett, and Ms. Ramos are, along with signatory Bio-Tec, named as respondents here, and the misconduct alleged is charged against signatory and nonsignatories alike, it would make little sense to compel Bio-Tec but not the individual nonsignatories to arbitrate such interrelated claims. The claims against all respondents are based on the same facts, are inextricably intertwined, and are inherently

---

[7] On December 20, 2010, Ecologic filed a *Complaint* against Bio-Tec, Mr. Lake, Ms. Burkett, and Ms. Ramos in the United States District Court for the Northern District of Illinois. [See Complaint, Ecologic Solutions, LLC v. Bio-Tec Environmental, LLC et al., No. 10-863 (N.D.Ill. Dec. 20, 2010), ECF No. 1]. In that action, Ecologic brings claims for breach of contract (again, the Distributor Agreement) and fraud against Bio-Tec, Mr. Lake, Ms. Burkett, and Ms. Ramos on the basis of the same alleged fraudulent misrepresentations and post-termination conduct at issue in the matter currently before this Court. With the exception of Count II, which is asserted only against Bio-Tec, all counts are asserted against all defendants, collectively. [See id at 8-12]. The Court takes judicial notice of this *Complaint*, as well as the proceedings in No. 10-863, N.D.Ill. See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979) (providing that, in appropriate circumstances, a federal court may take notice of proceedings in other courts, "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

inseparable.[8]  See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-

321 (4th Cir. 1988).  Under such circumstances, to compel arbitration of the claims asserted

by Ecologic against Bio-Tec but refuse to do the same with respect to Ecologic's identical

claims against Mr. Lake, Ms. Ramos, and Ms. Burkett would have the twin effects of

rendering the arbitration proceedings meaningless and also thwarting the federal policy in

favor of arbitration.  See id. at 321.

---

[8]  In its reply to Bio-Tec's response to the amended petition to compel arbitration, Ecologic asserts that Mr. Lake, Ms. Burkett, and Ms. Ramos received certain protections from the Distributor Agreement, explaining that "Lake and all employees of Bio-Tec are expressly mentioned in various provisions of the Agreement, including indemnity provisions. . . ." [Doc. 19 at 11-12].  As previously noted, the version of the Distributor Agreement that is a part of the record in this matter has been heavily redacted. [See id. at 1 n.1].  Because this Court recommends that the individual nonsignatory respondents be compelled to arbitrate on the ground that the claims asserted against them are identical to and inherently inseparable from those asserted against signatory Bio-Tec, the Court does not believe it is necessary to review the Distributor Agreement in its entirety.  However, assuming without deciding that Mr. Lake, Ms. Burkett, and Ms. Ramos are, as Ecologic contends, beneficiaries of indemnity clauses contained in the Agreement, they likely would be bound to arbitrate under the additional theory that it would be inequitable for them to benefit from favorable provisions of the Distributor Agreement while simultaneously eschewing its obligations.  See, e.g., Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc., 198 F.3d 88, 98 (2nd Cir. 1999) (non-signatory may be compelled to arbitrate when it has derived other benefits under  agreement containing arbitration clause).

**III. CONCLUSION AND RECOMMENDATION**

Accordingly, for the reasons set forth more fully above, and remaining cognizant of both (1) the strong federal policy favoring arbitration; and (2) its duty to resolve all doubts in favor of arbitration, <u>see</u> <u>Dumais v. American Golf Corp.</u>, 299 F.3d 1216, 1219 (10th Cir. 2002), the Court recommends that the parties be compelled to arbitrate their claims as explained more fully herein.

_____
Lorenzo F. Garcia
United States Magistrate Judge